UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF ANDREW W. HAYES, ADMINISTRATOR, RALPH K. HAYES<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FITNESS BEVERAGE WHOLESALERS LTD, AND CABOT INDUSTRIES, LLC.<br><br>Defendant | CIVIL NO. 3:07 CV 0187(EBB) |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the estate of Andrew W. Hayes ("Hayes" or "Plaintiff"), sets forth essentially two claims against Defendant, American Fitness Beverage Wholesalers Ltd. ("AFB" or "Defendant"). Both claims arise out of the termination of a prior product liability suit in federal court. First, Plaintiff seeks to enforce against AFB a judgment obtained in the original action against the co-defendant herein, Cabot Industries, LLC ("Cabot"), and Invigorate International, Inc. ("Invigorate, Inc."). Second, Hayes seeks contribution from AFB under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572o(e), pursuant to a settlement between Hayes and Paramount Health & Fitness, Inc. ("Paramount"), JNG Sports Supplement Distributors, Inc. ("JNG") and JBN Enterprises, Inc. ("JBN"). Defendant AFB was not a party to the original litigation or the settlement. Plaintiff's claim rests on

the assertion that AFB is the "alter ego" of Cabot. Defendant now seeks summary judgment on the basis that Plaintiff's claims are barred by the doctrine of res judicata or collateral estoppel. Defendant's motion for summary judgment is GRANTED.

**BACKGROUND**[1]

This is the latest in a series of legal proceedings following the tragic death of Andrew Hayes on April 4, 1999. Mr. Hayes died after consuming a beverage called "Invigorate" that was marketed by Invigorate, Inc. as a health food and nutritional supplement.

Plaintiff, the Estate of Andrew Hayes, filed an action in the District of Connecticut against Invigorate and Cabot Industries, a distributor of the product, on August 9, 2000.[2] Plaintiff

---

[1] The court sets forth only those facts deemed necessary to an understanding of the issues raised in, and the decision rendered on, this motion for summary judgment. The following factual summary is based on Plaintiff's Complaint ("Compl."), Defendant's Local Rule 56(a)1 Statement of Material Facts, Plaintiff's Local Rule 56(a)2 Statement of Material Facts, Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Memo."), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Memo.") and accompanying affidavits, depositions and exhibits ("Def.'s Ex." and "Pl.'s Ex."), to the extent that they are admissible evidence. Consequently, such factual summary does not represent factual findings of the Court. All facts stated below are undisputed (or have been deemed undisputed) unless stated otherwise.

[2] The original complaint in the District of Connecticut was docketed as Ralph K. Hayes, Admr. v. Invigorate International, Inc., et al., No. 3:00-CV0-1504 (AWT). Upon transfer to the Eastern District of Pennsylvania, the case was captioned Ralph K. Hayes, Admr. v. Invigorate International, Inc., et al., No. 04-

successfully joined seller Paramount by filing the first amended complaint on May 4, 2001. In two succeeding amended complaints, plaintiff joined distributors/sellers JBN Enterprises, Inc. ("JBN") on April 2, 2002 and JNG Sports Supplement Distributors, Inc. ("JNG") on July 30, 2002. Plaintiff then attempted to join Just Natural Growth Sports Supplement Distributors, Inc. ("Just Natural Growth") and AFB as defendants on October 24, 2003. In the Motion to Join Party Defendant and proposed amended complaint, Plaintiff claimed that Cabot was the alter ego of AFB. See Def.'s Ex. B, Motion to Join Party Defendant and Proposed Fourth Amended Complaint by Ralph K. Hayes, dated October 22, 2003, p.2.

AFB objected to the Motion to Join by way of an objection dated December 5, 2003. Def.'s Ex. C. Plaintiff filed no response to the objection within the prescribed time period. On February 5, 2004 (filed Feb. 9), Judge Thompson of the District of Connecticut granted the joinder of Just Natural Growth, but denied the Motion to Join as to AFB "without prejudice to renewal if the plaintiff submits evidence demonstrating that AFB was in fact the alter ego of Cabot Industries, LLC during the relevant time period." Def.'s Ex. D, Court (Thompson, J.) Order, entered February 9, 2004. Also on February 9, Plaintiff filed a reply to AFB's Objection to joinder (dated Feb. 6). Def.'s Ex. E. On March 12, 2004, Plaintiff filed a Motion to Reconsider Motion to Join AFB. Def.'s

CV-01577 (LDD).

Ex. F. Judge Thompson denied the Motion to Reconsider, because it had not been timely filed. See Def.'s Ex. G, Court (Thompson, J.) Order, dated March 27, 2004.

On April 5, 2004, Plaintiff filed a fourth amended complaint which again stated that AFB was the alter ego of Cabot, but did not attempt to add AFB as a party. See Def.'s Ex. V, Fourth Amended Complaint, dated March 11, 2004, ¶ 4. That same week, Judge Thompson transferred the case from the District of Connecticut to the Eastern District of Pennsylvania in response to Plaintiff's Motion for Transfer, on the grounds that the Eastern District of Pennsylvania was a more convenient location for suit against Invigorate's distributors. See Def.'s Ex. U, Court (Thompson, J.) Order, dated March 27, 2004.

Action in the Eastern District of Pennsylvania

Following the transfer, Plaintiff filed a second Motion to Reconsider Motion to Join AFB, dated May 14, 2004. Def.'s Ex. I. Plaintiff again incorporated the February 6, 2004 Reply brief, which asserted that, "[d]iscovery to date has revealed that AFB and Cabot Industries are alter egos of each other and were not operated pursuant to accepted corporate formalities." Def.'s Ex. I, Plaintiff's Motion to Reconsider Motion to Join AFB, dated May 14, 2004, p. 2. AFB filed an undated response to the Motion to Reconsider. Def.'s Ex. J. The district judge in the Eastern

District of Pennsylvania, Judge Davis, denied *with prejudice* the Motion to Reconsider by way of the Memorandum and Order filed on September 24, 2004, and entered on September 27. See Def.'s Ex. L, Memorandum of Decision and Order of the Court (Davis, J.), dated September 24, 2004 ("Sept. 24 Order.").

Judge Davis denied the May 14 Motion to Reconsider on both procedural and substantive grounds. First, under F.R.C.P. 59(e), a motion for reconsideration must be served and filed within 10 days after the entry of the initial order and judgment. Plaintiff waited forty-nine days after Judge Thompson's February 9 order (and thirty-nine days after the transfer of venue to the Eastern District of Pennsylvania) before filing the second Motion to Reconsider. Judge Davis found that Hayes had failed to show adequate justification for departure from the prescribed 10-day window. See Sept. 24 Order 5.

Judge Davis pointedly did not rest his denial solely on procedural grounds, stating, "[e]ven if the current motion for reconsideration was timely filed, which it was not, plaintiff fails to meet the applicable substantive standard to revisit a previous order through a motion for reconsideration." Id. Although Judge Thompson's order had not foreclosed the opportunity to renew the motion, Judge Davis noted that the "new" evidence Plaintiff had sought to introduce with the Motion to Reconsider had actually been in Plaintiff's possession at the time he filed the initial Motion

to Join in Connecticut in October of 2003. See id. at 7. Citing the identical Second Circuit and Eastern District of Pennsylvania standards for granting a motion for reconsideration, Judge Davis held that "Plaintiff has failed to carry his burden by adducing newly discovered evidence, an intervening change in controlling law, or the need to correct a clear error of law to prevent injustice." Id. at 6. Judge Davis concluded:

> [P]laintiff puts forward no reason why it was inappropriate, let alone legal error, for Judge Thompson to deny the original motion to join AFB, which failed to present any evidence of an alter ego theory of liability against AFB.

Id.

Paramount's Third Party Complaint Against AFB

On October 18, 2004, one of the defendants in the original suit, Paramount, filed a Third Party Complaint against AFB, seeking indemnification or contribution. Paramount alleged that AFB was the alter ego and successor in interest "to all of the assets and liabilities of Cabot Industries, LLC," and was therefore responsible for "any alleged injury, damage or loss sustained by Plaintiff's decedent ...." Def.'s Ex. M, Third Party Complaint of Paramount Health & Fitness, Inc., dated October 18, 2004, ¶ 11, 37. The court granted summary judgment in favor of AFB on October 5, 2005. Judge Davis examined Paramount's allegations of alter ego liability under Connecticut law and determined that Paramount

"failed to adduce facts from which a reasonable jury could conclude that AFB is the alter ego of Cabot." See Def.'s Ex. T, Memorandum of Decision and Order of the Court (Davis, J.), dated October 5, 2005, p. 8. AFB had raised, but the court did not discuss in its order, the argument that the alter ego issue had already been determined as a matter of law by the previous decisions in the districts of Connecticut and Eastern Pennsylvania. See Def.'s Ex. Q, AFB's Motion for Summary Judgment against Paramount, dated September 8, 2005, p.7.

Settlement & Judgment Against Cabot

The original case was then submitted to a magistrate judge in the Eastern District of Pennsylvania for arbitration. Hayes settled with Paramount, JNG and JBN for $710,000.00 in an agreement dated March 6, 2006. See Compl. Ex. 1, Joint Tortfeasor Release and Agreement to Release Indemnification and Contribution Claims ("Settlement"). The settlement stated, "the Releasees assign their right of contribution and/or indemnification that Releasees may have against any other joint tortfeasors whatsoever to the Releasor." Id. at 5. On March 23, 2006, Judge Davis issued an order dismissing the fourth amended complaint and all cross-claims and third party complaints against Paramount, JNG and JBN. On April 12, 2006, Judge Davis entered a default judgment against Cabot and Invigorate. See Compl. ¶ 5. According to Plaintiff,

this judgment remains partly unsatisfied. Id.

Plaintiff filed the present action in the District of Connecticut on February 7, 2007.

**DISCUSSION**

Hayes' suit, in its current iteration, rests on the assumption that AFB is the "alter ego" of Cabot Industries. This issue has already been litigated before two other federal judges. Plaintiff unsuccessfully moved to join AFB in the original product liability case, and federal courts in Connecticut and Pennsylvania denied two succeeding motions for reconsideration. Paramount, as a third party plaintiff, unsuccessfully attempted to recover contribution from AFB on the same "alter ego" theory. Defendant again maintains that it is independent of Cabot and affirmatively asserts the defenses of res judicata and/or collateral estoppel. See Defendant's Answer and Affirmative Defenses [Doc. No. 18], p. 9.

Because a defense of res judicata or collateral estoppel may be dispositive of a claim, the question of whether Plaintiff's action may proceed as a matter of law breaks down into two issues. First, whether the common law doctrine of res judicata or collateral estoppel bars the Plaintiff from re-litigating its contention that AFB is the alter ego of Cabot before this court. Second, if current action is not barred, whether Plaintiff has met the evidentiary burden on his substantive claims to survive

Defendant's motion.

A. Applicable Law

1. Summary Judgment

Summary judgment is the appropriate method for resolving a claim of res judicata or collateral estoppel. See Tibbetts v. Stempel, 354 F.Supp.2d 137, 144 (D. Conn. 2005)(citing Jackson v. R.G. Whipple, Inc., 627 A.2d 374, 377 (Conn. 1993)("Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata")). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp v. Catrett, 477 U.S. 317, 322(1986)(quoting FED. R. CIV. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir.1993). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law", while an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000). The evidence of the non-moving party is to be believed, Anderson, 477 U.S. at 255, and "the inferences to be drawn from the underlying facts . . . must be

viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

2. Res Judicata and Collateral Estoppel

Federal common law governs the preclusive effect of previous decisions by a federal court sitting in diversity. Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001), cited in Tibbetts v. Stempel, 354 F.Supp.2d 137, 145 (D.Conn. 2005), aff'd 288 Fed.Appx. 743 (2d Cir. 2008). Under federal common law, the preclusive effect of "any decision by the federal court in that case is to be determined by the state preclusive law of the state in which the district court sits." Tibbetts, 354 F.Supp.2d at 145 (applying Connecticut's claim preclusion standard in a diversity action). Therefore, Connecticut state law applies to the preclusive effect of the previous decisions in favor of AFB.

Connecticut state and federal courts take a jaundiced view of multiple attempts by the same plaintiffs to litigate similar claims against the same defendants. "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful re-litigation." Gionfriddo v. Gartenhaus Café, 546 A.2d 284, 290 (Conn. App. 1988), aff'd 557 A.2d 540 (1989)(internal citations omitted); accord Allen v. McCurry, 449 U.S. 90, 94

(1980)("[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."); see also Benjamin v. Traffic Executive Ass'n Eastern Railroads, 869 F.2d 107, 110-111 (2d Cir. 1989)(citing the policy grounds for permitting the findings of arbitration boards to serve as a basis for collateral estoppel in federal courts). These judicial doctrines "should be applied as necessary" to promote the underlying purposes of protecting judicial economy and preventing inconsistent judgments, while considering the competing interest of the plaintiff in the vindication of a just claim. See Delahunty v. Massachusetts Mutual Life Ins. Co., 674 A.2d 1290, 1294 (Conn. 1996).

Res Judicata, also called claim preclusion, provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, "the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim and demand, but as to any other admissible matter which might have been offered for that purpose.'" Tibbetts, 354 F.Supp.2d at 146 (quoting Commissioner v. Sunnen, 333 U.S. 591, 597 (1949)). The judgment "puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." Id.; see also Efthimiou v. Smith, 846 A.2d 222, 227 (Conn. 2004) ("If

the same cause of action is again sued on, [a final judgment on the merits] is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made."). Res judicata "prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Delahunty, 674 A.2d at 1294.

To prevail on a motion for summary judgment premised on res judicata, the moving party bears the burden of showing that the prior decision was (1) a final judgment on the merits; (2) by a court of competent jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving the same cause of action. See, e.g., Tibbetts, 354 F.Supp.2d at 146 (citing Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 190 (2d Cir. 1985)). To determine whether two claims arise from the same cause of action, Connecticut has adopted the "transactional test." See Delahunty, 674 A.2d at 1294. In applying the test, the court should compare the complaint in the second action with the pleadings and the judgment in the earlier action. Id.; see also Nevada v. United States, 463 U.S. 110, 131-34 (1983)(finding that a complaint filed in 1973 arose out of the same transaction as a 1913 adjudication of irrigation rights). The determination of what facts constitute a transaction is resolved "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation," or

"whether they form a convenient trial unit ...." 674 A.2d at 1294 (citations omitted).

Under Connecticut law, res judicata (claim preclusion) and collateral estoppel (issue preclusion) "have been described as related ideas on a continuum." (Internal quotation marks omitted.) Efthimou, 846 A.2d at 227 (quoting Dowling v. Finley Associates, Inc., 727 A.2d 1245, 1250 (Conn. 1999)). Issue preclusion is "that aspect of res judicata" that prohibits the relitigation of an issue that was "actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." Id. (citations omitted). An issue is "actually litigated" if it is "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined ...." Id.(citing 1 Restatement (Second), Judgments § 27, comment (d)(1982)). An issue is "necessarily determined" if, in the absence of a determination of the issue, the judgment could not have been validly rendered. Id. (quoting Dowling, 727 A.2d at 1251). On a motion for summary judgment, the moving party bears the burden of proving both elements. See id; accord Tibbetts, 354 F.Supp.2d at 146.

B. Analysis of Hayes' Claims

1. Enforcement of the Pennsylvania Judgment

Plaintiff filed the current matter in the District of Connecticut as an "Action for Contribution under Connecticut

Liability Act, CGS § 52-572o(e)". See Compl. The action for contribution, however, is dependent on the enforcement of the default judgment from the previous products liability action:

> 9. This action is brought to enforce the judgment entered in the prior action and to seek contribution pursuant to Connecticut General Statute § 52-572o(e) from a joint tortfeasor, AFB.

Compl. In the section of the complaint describing the relief requested, Plaintiff does not actually ask for contribution, but requests only enforcement of the default judgment.[3] The complaint, therefore, could be read as if the action for contribution is primarily a prop to get around the expected preclusion issues.

While the requested relief in the complaint relates only to the claim for enforcement of the default judgment, Plaintiff provides legal support only for the action for contribution. In Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Memo."), the header for the legal argument explicitly states, "The Doctrine of Res Judicata Does Not Bar the Present Action *Seeking Contribution Only*" (emphasis added). See Pl.'s Memo. 10. Plaintiff goes on to argue that "JNG's contribution claims ... remained viable and were assigned to the

---

[3] "WHEREFORE, the Plaintiffs respectfully request:

1. Fair, just and reasonable compensatory damages in the amount of One Million Two Hundred Twenty Nine Thousand One Hundred Fifty One Dollars ($1,229,151.00);
2. Punitive damages in the amount of Ten Million Dollars ($10,000,000);
3. Attorney's fees;
4. Such other relief as this Court deems just and equitable."

Compl. 10.

Plaintiff via Release." Id. at 18. The claim for enforcement of the default judgment is mentioned in only one sentence in the "Background" section of the memorandum, without legal support,[4] and Plaintiff does not challenge Defendant's assertion that the enforcement action is barred by the doctrine of res judicata or collateral estoppel. In effect, Plaintiff failed to file a memorandum in opposition to Defendant's argument as is required under Local Rule 7(a)(1).[5] The court therefore accepts Defendant's contention that the action for enforcement of the default judgment is procedurally barred.[6]

---

[4] "The present action is brought to enforce the judgment entered in the Prior Action and to perfect the rights of contribution assigned to the Plaintiff as set out in the Release." Pl.'s Memo. 2.

[5] Local Rule 7(a)(1) reads: "Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." United States District Court for the District of Connecticut Local Rule of Civil Procedure 7(a), effective January 1, 2004, amended December 2007.

[6] Plaintiff's complaint and pleadings focus on evidence that AFB is the alter ego of Cabot and on what Plaintiff contends are AFB's efforts to hinder the judicial process. Plaintiff's oral argument at the motion hearing held before this court on October 8, 2008 also centered primarily on these issues. See Doc. No. 41. This focus is misguided. Evidence regarding the underlying claim is generally relevant only once the matter has survived summary judgment on res judicata or collateral estoppel. See generally Jackson v. R.G. Whipple, Inc., 627 A.2d at 377. These doctrines are procedural in nature, and whether the prior judgment was correctly decided is largely irrelevant. See generally Allen v. McCurry, 449 U.S. at 94. Absent a showing of fraud, collusion, etc., by the previous court of competent jurisdiction, a judge is bound to apply the procedural doctrines, even if she or he might have decided the original matter differently. See generally Wade's Dairy, Inc. v. Town of

Moreover, Plaintiff provides no evidence that the default judgment he seeks to enforce was actually entered for the amount he asserts. In the complaint, Plaintiff contends that "[on] or about April 12, 2006," the court in the Eastern District of Pennsylvania "entered judgment in the amount of One Million Two Hundred Twenty Nine Thousand One Hundred and Fifty One Dollars ($1,229,151)" against Cabot and Invigorate, Inc. Compl. ¶ 5. Plaintiff failed to provide the court with a copy of the default judgment itself (if one exists) or the associated docket entry. Defendant, however, did provide a copy of the docket from the Eastern District of Pennsylvania, which twice lists the default award for the amount of "$1,229.51", not $1,229,151.[7] See Def.'s Ex. A, United States District Court for the Eastern District of Pennsylvania (Philadelphia), Civil Docket for Case # 2:04-cv-01577-LDD, Doc. No. 131. Plaintiff neither points out nor attempts to explain this ten thousand-fold discrepancy. Nor does Plaintiff provide the court with enough information to determine whether the award listed in the docket entry in evidence was a typographical error, and if so,

Fairfield, 436 A.2d 24, 26 (Conn. 1980).

[7] "Order that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, judgment is entered in favor of Plaintiff Ralph Hayes against Defendants Cabot and Invigorate on Plaintiff's claim under the Connecticut Product Liability Act in the amount of $1,229.51. Defendants Cabot and Invigorate are jointly and severally liable for the default judgment award of $1,229.51. The clerk of court is directed to close this matter for statistical purposes; etc. Signed by Judge Legrome D. Davis on 4/11/06. 4/14/06 entered and copies mailed, e-mailed.(jl,) (Entered: 04/12/2006)." E.D.P.A., 04-cv-01577, Doc. No. 131.

whether Plaintiff ever sought to have the docket entry corrected.

Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's claim for enforcement of the April 12, 2006 default judgment. Because the compensatory and punitive damages sought in Plaintiff's complaint arise exclusively from the claim for enforcement of the default judgment, Plaintiff is prohibited from pursuing them further against AFB.

2. Right of Contribution

Having already decided that Hayes' suit for enforcement of the default judgment may not proceed, the court need not specifically decide the claim for contribution.[8] Without enforcement of the default judgment, there is no money award and no possible source of contribution.

It is worth noting, however, that even had the suit for enforcement gone forward, it is questionable whether Hayes could have received contribution on behalf of the settling defendants

---

[8] In an action for contribution, the question would be whether res judicata or collateral estoppel bars the releasees, not Hayes, who would operate as their assignee. Under Connecticut law, an assignee "stands in the shoes of the assignor." Schoonmaker v. Lawrence Brunoli, Inc., 828 A.2d 64, 80 (Conn. 2003)(citations omitted). As such, "[a]n assignee has no greater rights or immunities than the assignor would have had if there had been no assignment." Shoreline Communications, Inc., v. Norwich Taxi, LLC, 797 A.2d 1165 (2002); see also American Alternative Ins. Corp. v. St. Paul Guardian Ins. Co., 2007 Conn.Super. LEXIS 816, *16 (explaining that the relevant inquiry is whether assignor, not assignee, is barred by collateral estoppel).

under the terms of the 2006 settlement itself. In the settlement, Paramount, JNG and JBN ("settling defendants") "assign their right of contribution and/or indemnification that Releasees [settling defendants] may have against any other joint tortfeasors whatsoever to the Releasor [Hayes]." Settlement 5. Contribution is "a payment made by each, or by any, of several [joint tortfeasors] having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others." Barry v. Quality Steel Prods., 905 A.2d 55, 63-64 (Conn. 2006); see generally Black's Law Dictionary 329 (7th Ed. 1999). Under Connecticut and Pennsylvania law, an action for contribution is available only when a joint tortfeasor has paid more than his proportionate share of liability determined as a percentage of fault. See, e.g., Barry, 905 A.d at 64 (contribution is an equitable remedy available when one party has paid more than its common share of fault); MIIX Ins. Co. v. Epstein, 937 A.2d 469, 472 (Pa. Super. 2007)(contribution is available when a "joint tortfeasor has discharged the common liability or paid more than his pro rata share"); Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S. § 8321 (2008). Yet the settlement explicitly states that "[t]he proportionate share of liability of the releasees is $710,000," which was the total amount of the settlement. See Settlement 3. The settlement also forecloses any further liability on the part of the settling defendants:

> Releasor specifically agrees to reduce any recovery which

> may be awarded or verdict and/or judgment which may be entered in any matter to ensure that Releasees shall never be obligated to pay to Releasor *or any other person or entity* [emphasis added] more than the $710,000.00 payment stated in this Joint Tortfeasor Release.

Settlement 3. If the settling defendants have already paid the exact amount of their proportionate share of fault and are indemnified by Hayes against any potential suits by other joint tortfeasors, it is unclear what award a suit for contribution could have yielded.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 23] is GRANTED.

SO ORDERED

/s/

ELLEN BREE BURNS

SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 2nd day of April, 2009.